Let's go ahead and start with the Shepherd v. City of Seattle case. In this case, each side will have 15 minutes. If appellants would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your time. Mr. Helmy? Helmy? How do I pronounce your name? Helmy, Your Honor, yes. Helmy, okay. Yes, it's Helmy, Your Honor. Okay. Mr. Helmy, you may begin when you are ready. Thank you, Your Honor. I will begin now. This is my first appearance before the Ninth Circuit, so I thank Your Honors for your courtesies today, in particular for letting me appear via Zoom due to personal circumstances. I do appreciate it. Second, I'm grateful for the opportunity to be here to discuss a case of this importance, not only because it's for a man that I care about, Officer Adley Shepherd, but there are considerable issues of jurisdictional importance as precedent in this matter, issues of fundamental fairness procedurally, as well as issues regarding the integrity of our justice system itself. So without further ado, I'll get into that. Having trust, trusting the judges, excuse me, I'm not sure whether to address the panel as judges or justices. I think it's judge, so I'll go with that. Judge will be fine, but if you want to call us justice, we won't object. Well, that's fine. I'm happy to extend an additional courtesy. No, no, it's fine. It's judges. It's judges, and of course, it gets confusing because of the California justices and others. So, yeah, we understand.  Well, if the judges will permit me, I'll get right into the assignments of error. It's interesting that the judges have reviewed the opening and reply briefs as well as the responsive brief of the defendant. This should mostly serve as a recap. I am, of course, very happy to address any kind of questions that the panel has. Counsel, I have a question. Counsel, I have a question for you. Let me just start you off the bat here since your time is running down. Why didn't you file a Rule 56D affidavit? Well, Your Honor, and I anticipated this question. The reason we didn't file that is because our time for doing that hadn't been exhausted yet at the time that the district court ruled on the motion for summary judgment and granted it in favor of the city. The statute and the precedent cited in our briefs holds that a party opposing summary judgment may file a 56F motion at any time before the hearing. In this case, the hearing was struck about two weeks before it was scheduled to occur, so we simply didn't have the opportunity to do that. We had planned on doing it as of the time that we got the summary judgment opposition, but we simply didn't get the chance to before the hearing was struck. So that's actually one of the questions. Normally what you would do in that circumstance is file a 56D motion, explain just what you said is that the striking of the hearing preempted, if you will, maybe the normal course, but you wouldn't just let it go. That's really the problem. Well, I understand, Your Honor, and that's the way that we usually do it. Notwithstanding that, the rules do allow us to file it at any time up to the date of the hearing, and that's what we anticipated doing in this case, and we simply didn't have the occasion to do that. And it may well be that the issue as to which the 56F would have pertained didn't occur to me until really after the response date, perhaps. I can't remember exactly. But irrespective, the rules would have granted us time to do that up until the time of the hearing, but when that process is cut off at the knees by the hearing being struck two weeks early, that's a different animal. Counsel, what about the surreply? It's my understanding that you argued that you would have wanted to file a surreply, but you failed to do so. It's not that I failed to do so, Your Honor. It's that we didn't get a chance to do so. And this is particularly with respect to the issue that the city brought up, the new issue that the city brought up in its reply brief, as we indicated, the issue of timeliness. That is something that we would have liked to have asserted in a surreply and or via 56F. But, again, the striking of the hearing two weeks before it was set to happen. When was the deadline for you to file? Through that procedure rescue. Counsel, when was the deadline for you to file your surreply? I don't think that we would have had to have leave to file the surreply, Your Honor. And that would have in turn been based upon the hearing date for the summary judgment hearing. I don't recall the exact timing under the local rules. So once the hearing date went away, you were relieved of all responsibility in regard to the questions my colleagues have asked? I don't know that I was relieved of responsibility, Your Honor. I think I was relieved of opportunity. You couldn't? Once the court has decided, the court has decided. You couldn't ask for a rehearing? Your Honor, I understand that's frowned upon in the Western District of Washington. It's frowned upon, but people do it all the time, and they say, hey, wait a second. I have a serious problem here, and I need the court to take another look at it. So it's not absolutely precluded. It's just not the favored way. On the other hand, you found yourself in a kind of unusual situation given the timing. So I don't think there was anything that I know of that would have precluded you in the Western District of Washington. Well, perhaps not, Your Honor, but following the rules in an orthodox way, the summary judgment ruling was a dispositive ruling concluding the case on its merits, and therefore making the matter right for appeal. And in view of the multifarious issues regarding errors of, I'm sorry, assignments of error that we've noticed, we felt it was best taken up before Your Honors rather than resubmitted to the attention of the trial judge. In my experience, frankly, motions for reconsideration don't tend to work very well, because although we actually assert something, actually I have here this wonderful book. Judges aren't familiar with it. This is Influenced by Cialdini, a wonderful book on human psychology and the science of influence. The number one rule in that book is that people tend to act in accordance with what they've already done. And I don't have time to get into the evolutionary pathways of the psychology, but the point is the judge, having decided what he did, was very unlikely to reverse it. It's much better to get it before a set of fresh eyes such as yourselves, especially when there are multiple layers of error on top of that. I'm sorry, should I wait for the next question or continue with my argument? You may continue in the meantime. We'll chime in if we have questions. I appreciate that. Okay, so the first assignment of error is that it was reversible error for the district court to dismiss the plaintiff's claims on contested factual issues, which reasonably required further discovery. And one of those was the issue of the Seattle Police Department's policies, patterns of behavior, and practices regarding discrimination. The city of Seattle was the one in control of the bulk of those records. We were still waiting for disclosure of expert discovery and declaration of expert testimony. Up until that time, we wouldn't have been in proper position to really query what exactly was the history and what would have happened. Discovery was ongoing on that point. And the authorities that we cite in our briefs hold that it's not just frowned upon, it's unlawful to grant summary judgment where there is an issue requiring further discovery that's actually material to the determination as it was here. The court, apropos that, also overlooked important evidence. The court disregarded the sworn statement of the officer that we got to testify to the effect that he had not actually ever heard of a DRB decision being appealed by the city in the case of a Caucasian officer, only in the case of a black officer, officer had. This was a first. It had never been done. The court simply overlooked that and made a mistake. It just disregarded that piece of the record. It was very much in there. Let's see. Next. We feel it was an abuse of discretion to determine that oral argument was unnecessary for the same issue. I'll just defer to the briefs there. I think we've addressed that fully in that portion. Disregarding evidence of the 1981 claim, I've already addressed that. That was Officer Mahoney's testimony. Let's see. As to the timeliness of the timeliness issue that the court raised, again, we'll defer to the briefs on that. One of the most important things here, the principle for which I think this argument is most important, is that the court erred in holding that none of the actions that happened were actionable. None of the behaviors of the City of Seattle were actionable because they occurred after termination. Well, in point of fact, with respect to the appeal of the DRB provision, that happened after DRB had ordered Officer Shepard to be reinstated. So the question is, is a government agency like the Seattle Police Department at liberty to ignore its own procedures with respect to the question of whether somebody's been reinstated or not? Is it allowed to make up its own reality in other words? And we submit that that creates – that's a farce. That's a farce in terms of the rights of any party. What is the point of having a system where an administrative panel here, the DRB, determines that he is to be reinstated if the City of Seattle was then at liberty to simply ignore that and deem that, no, in fact, he had been fired because we simply choose to ignore the order to reinstate. There's an absurdity there and really a toxic circularity in that argument that we think is a danger, frankly, to everything else. I mean, imagine the peril if in administrative law or anywhere else people who are subject to the rule of law, to the jurisdiction of courts and administrative agencies, are free to deem the facts to follow an alternative reality simply because they refuse to follow the order handed down by the administrative agency or court. That is tremendously dangerous. Counsel, let me interrupt. I have a question. Justice really depends on – yes, ma'am. Go ahead. Okay. So the DRB issues its written report on November 19, 2018, ordering Shepard to be reinstated. But less than a month later is when the city files a complaint in the Superior Court asking the court to reverse the DRB ruling because, and I quote, it violates the well-established Washington public policy against excessive use of force in policing. So are you telling us that the city during that less than one month violated some sort of rule by not reinstating them when they didn't believe that the DRB had done something that was legal? They felt that it violated the well-established Washington public policy, and it turned out they were, at least as far as the court is concerned, they were correct. The court overturned the DRB's finding. Well, Judge D'Alba, really what you're getting at respectfully is was it within the discretion of the Seattle Police Department? Did they have the authority to disregard an order that they simply didn't agree with? Is it deemed to be non-binding while they are challenging it? The answer is no. They are not free to do that. The order is binding. What is your – Unless an attil is reversed. What is your authority for that? Okay. If we have authority for that, it would be in the brief. I think one answer to that would be the collective bargaining agreement. Yes, ma'am. That's correct. But that doesn't preclude an appeal. I mean, that's really the question.  I understand why you think it was wrong. Totally understand that from your client's point of view. But I am having trouble understanding what the legal authority is that says that you can't – the city couldn't appeal or challenge that. Well, the city could appeal or challenge that, Your Honor. The problem is that there was a – is that nothing like that had ever happened in the case of a white officer. The city resorted to extraordinary proceedings for the purposes of effectively punishing a black officer, treating him in a discriminatory manner inconsistent with his rights under the Constitution. How many times has that happened? And it did so in violation of an established precedent. And again, I mean, really, what's my authority? The fundamental principle that rulings of courts and rulings of administrative bodies whose jurisdiction is acknowledged are not to be disregarded. Counsel, how many – It's a fundamental principle of our system of justice. Counsel, you have less than a minute left. How many African-American police officers – I know you mentioned that they'd never appealed it when it was a Caucasian officer. How many times had they appealed it for an African-American officer? I believe this is the only case. Okay. The last point I can make, I think, in my last 30 seconds, the issue of supplemental jurisdiction is important. And the court significantly prejudiced Officer Shepard here by not considering his state claims because they're arguably barred by statute of limitations even if dismissed without prejudice. And the court was required to run the tests under the Brahampour and Thompson cases, which it did not do. Thank you. I guess I'm out of time. Okay. Thank you, Counsel. Thank you. Okay. Good morning, Ms. Tilstra. Good morning. That's correct, Your Honor. Wonderful. Ms. Tilstra, we'll go ahead and hear from you now whenever you're ready. Thank you. Good morning, Your Honor. May it please the Court. I'm Assistant City Attorney Sarah Tilstra representing the City of Seattle. Here with me at counsel table is my colleague, Assistant City Attorney – Could you pull the microphone just a little closer? Thank you. How's this, Your Honor? Perfect. Way better. Okay. Great. With me at counsel table is Assistant City Attorney Deborah Fyander. Officer Adly Shepard was fired after he punched a handcuffed woman in the face in the back of a patrol car so hard that he fractured her skull. His union appealed that termination all the way up to the Washington State Supreme Court, but the courts ultimately found that the DRB's reinstatement of his employment violated the public policy against the use of excessive force in policing. Seeking another bite at the apple, Mr. Shepard then belatedly brought this employment action more than five years after his employment was terminated. The district court dismissed the only federal employment claim Mr. Shepard did not abandon because it was based on an act that occurred after Mr. Shepard was terminated and because Mr. Shepard did not argue or show that that act was the result of a municipal policy or custom. The district court did not err in this decision, nor did it abuse its discretion in managing its docket around the summary judgment motion in the way that it did. First, I'd like to talk about the district court's ruling on Mr. Shepard's Section 1981 claim, which is the only court decision here that is reviewed de novo. Then I'll move on to addressing the docket management issues to which Mr. Shepard assigns error. In opposing summary judgment, Mr. Shepard argued that his Section 1981 employment discrimination claim was timely because it was based on the city's 2018 decision to seek superior court review of the DRB's reinstatement order. The district court correctly dismissed this claim, holding that because the city's decision to seek review occurred after Mr. Shepard's employment had been terminated, as a matter of law, that decision could not form the basis for a Section 1981 disparate treatment or hostile work environment claim, which require an adverse employment action and an abusive work environment, respectively. Mr. Shepard has not and cannot show that this is error. His argument that the DRB's order of reinstatement acted unilaterally to make him an employee again without any action on the city's part is factually and legally unsupported. As Your Honor alluded to in questions to Mr. Helmy, the city argued and was successful in arguing that the DRB's decision reinstating Mr. Shepard violated public policy and that, therefore, it needed to be vacated and did not need to be followed, just as any contract that violates public policy is void and does not need to be followed. So, counsel, let me ask you something about that. And I do note, as I stated to Mr. Helmy, that the city filed their complaint less than a month after the DRB's decision. How long does the city have before it does have to follow what the DRB says? So does it have 30 days? Does it have 60 days? At what point does it have to reinstate per the CBA and then go say, hey, we did it because our hands are tied, but we think it's wrong? I don't think there is a specific – there certainly wasn't anything specific in the order or anything specific in the court rules that say you have this period of time. I mean, I think, generally speaking, it's always best to, if you're going to act, to act quickly and to quickly appeal the decisions that you think are wrong. Let me give you this hypothetical thing because I'm having a little bit of difficulty wrapping my mind around this. So let's assume you were fine with the – that the city didn't have an issue with the DRB's written order to reinstate Mr. Shepard. When would that reinstatement have taken place then? Oh, gosh. Is that something that automatically happens? Does the city have to file some paperwork or respond to the DRB in some way? That's a good question, Your Honor. I do not know the answer off the top of my head, but our position is that some action does need to take part. The city does need to take some action. There's no custom or practice or routine that deals with the situation that my colleague addresses. I mean, I think that the city would – I'm shooting from the hip here, Your Honor, but – Not even – If there's no custom or practice, I think the answer would be there is no custom or practice. There may be a practice, I'm unaware of one, in terms of how quickly the city might reinstate if it was going to reinstate, but I'm unaware of one. And, frankly, the reinstatement is not the – Mr. Sheppard is taking issue with the appeal, not the failure to reinstate. Or, sorry. It is partly the failure to reinstate, though, because the allegation is he didn't suffer an adverse employment action because he was never reemployed. And that's why I'm asking, had you not had a problem with the DRB's decision, technically, under whatever rules you have, when would he have been considered reemployed? Yes. And I don't know that there is a specific time period within which the city would have acted if it didn't have an issue, but some action would have had to occur on the city's part. You know, there would have had to be HR re-onboarding. He would have had to be put back into the system. There's a whole, you know, administrative aspect to putting somebody – to hiring somebody. So do I understand correctly, in this case, there was no effort to reinstate? Well, the city believed that the DRB's order – Can we start with the yes or no? Yes, correct. There was no effort to reinstate. The city believed that the DRB's order violated public policy, and it felt that the order was against the public policy, against the use of excessive force in policing, and that's why the city sought review to the Superior Court and was ultimately successful in the Superior Court and in the Court of Appeals. And the Washington State Supreme Court denied cert. What would have happened if, after the DRB ruled, he had – Officer Shepard had gone to Superior Court and asked the court to enforce the terms of the collective bargaining agreement? Well, his union did ask the court to enforce the terms of the collective bargaining. The SPOG made a counterclaim against that, so that was part of that lawsuit. So he had an expert who basically said that the city wouldn't have treated a white officer in this regard and never had. Isn't that enough of a factual issue on a Monell claim? I don't believe so, Your Honor. Monell requires that you put forth evidence of an official policy or a longstanding custom. Mr. Mahoney's statement is very bare bones, and it simply says, I have never known the city to seek review of a disciplinary decision involving a white officer. He doesn't say – and to your point, I mean, you asked Mr. Helmy about whether the city had a custom or policy of appealing decisions of black officers, and he answered that he believed that this was the only one. And so simply saying that he has never known the city to appeal decisions regarding white officers does not establish a longstanding custom that caused Mr. Shepard's alleged constitutional violation here. Do we have any evidence in the record as to whether this was a one-off situation and the only time there had been an appeal? There is not any evidence in the record about that, no. Because Mr. Shepard was not a city employee at the time the city sought review, this Court doesn't need to reach the Monell issue. But as I mentioned, the district court's holding on that issue was correct as well. Mr. Shepard did not allege or show that the city's decision was the result of an official municipal policy or custom. A declaration from a former SPD employee stating he had never known the city to seek review of a similar decision involving a white officer does not identify any official municipal policy or longstanding custom that resulted in Mr. Shepard's purported injury. In addition, I want to very briefly address this Court's recent decision in Yoshikawa v. Segurint, where it held that Section 1981 does not confer a private right of action and that such claims must be pled through Section 1983. While this does provide an alternative basis to dismiss the 1981 claim, it doesn't change the outcome here because the same Monell and adverse action infirmities would do Mr. Shepard's claim even if he were permitted to replete it under Section 1983. I'd like to go on now to talk about the district court decisions associated with the summary judgment briefing that Mr. Shepard challenges. Notably, the decision to grant summary judgment is the only issue that is subject to de novo review. All the other district court decisions Mr. Shepard raises are subject to review for abuse of discretion. First, the district court did not abuse its discretion in ruling on the city's summary judgment motion before discovery was complete. There is no rule or case law stating that discovery must be complete or the discovery cutoff must have passed before a party can move for summary judgment or before a court can rule on such motion. Moreover, if Mr. Shepard believed that he needed additional discovery to respond to the city's motion for summary judgment, he could have and should have filed a 56D motion, and he did not. The case law cited in the brief demonstrates that a district court does not abuse its discretion in deciding a summary judgment motion when no such request is made. Second, the district court did not abuse its discretion in deciding oral argument was unnecessary. The local court rules give district courts considerable discretion to manage their dockets, and that includes discretion to decide motions without oral argument. Here, the district court concluded that oral argument was unnecessary and decided the matter on the briefing. Mr. Shepard has cited no rule or case indicating that this was not permitted or was an abuse of discretion. He also has not demonstrated any sort of prejudice. He claims he would have been able to address the city's alleged newly raised arguments at oral argument, but he didn't follow the procedure to file a surreply, requesting that material in the city's reply be stricken. I want to address something that Mr. Helme stated on opening very quickly. Under the local rules, you don't need leave to file a surreply if you are asking for some material that you think should be stricken in a moving party's reply. You give notice as quickly as possible so that the court doesn't rule on the motion before you're able to file your motion to surreply, and then within five days, you have to file a surreply. So no leave was and more than five days had passed, many more than five days had passed when the court ruled. It was his failure to follow applicable rules, not the court's decision to decide the case on the briefs, that caused alleged prejudice to Mr. Shepard. The city's timeliness argument also was not improperly raised for the first time in reply. The city argued in its opening summary judgment brief that Mr. Shepard's Section 1981 employment discrimination claims were untimely because they were filed more than four years after he was terminated. In his response brief, Mr. Shepard stated for the first time that the city's decision to seek review of the DRB's order was an event underlying his Section 1981 claim. So in reply, the city pointed out that this event could not form the basis for an employment discrimination claim because it occurred after his employment ended. This is not a new argument, but instead it's an application of the city's previously raised timeliness argument to Mr. Shepard's identification of a new act upon which his claim was based. And it was not improperly argued on reply. But again, if Mr. Shepard believed that it was improperly argued on reply, he could have filed a surreply. He didn't file a surreply. Finally, the district court did not abuse its discretion in declining supplemental jurisdiction over the state law claims. The district court declined to exercise supplemental jurisdiction over the remaining claims, the state law claims, pursuant to 28 U.S.C. Section 1367 C.3 because it had dismissed all claims over which it had original jurisdiction. The San Pedro Hotel case and its progeny hold that a district court need not explain the reasons for declining supplemental jurisdiction if those claims are dismissed pursuant to C. Sections 1 through 3. Explanation is only required under Section 4, which is the exceptional circumstances catchall that requires compelling reasons. Mr. Shepard doesn't address San Pedro Hotel, and instead he claims that Barampur and Tongson require the district court to conduct an analysis. Both of these cases are distinguishable. In Barampur, the district court didn't mention the state law claims at all. And in Tongson, the district court chose to engage in some limited analysis, even though it was dismissing under C.3. Notably, Mr. Shepard has cited no case in which this court has held that a district court explicitly declining supplemental jurisdiction under C.3, which is what the district court did here, had to conduct additional further analysis. In sum, Mr. Shepard has not shown that the district court erred in dismissing employment claims brought over five years after he was terminated. Neither did the district court abuse its discretion in managing the docket the way that it did. The city respectfully requests that this court affirm the district court. And if your honors don't have any additional questions? All right. Thank you. And as I note that, counsel, Mr. Helmley, you did not reserve time for rebuttal and you ran out of your time. This matter is now submitted. Thank you. Thank you, your honors. Thank you. I appreciate the honor to be here today. Thank you very much. Thank you, sir. Have a great day.
judges: HAWKINS, McKEOWN, ALBA